## 63450. JORGES v. GRIFFIN.

QUILLIAN, Chief Judge.

On November 1, 1973, the plaintiff, Edward W. Jorges, sold 200 shares of common stock in Apex Carpet Finishers, Inc. (Apex) and 2,000 shares of common stock in Jorges Carpet Mill, Inc. (Jorges) to the defendant who had just assumed the dual positions of Vice President with Apex and Assistant to the President with Jorges. The sale of the Apex and Jorges stock was evidenced by two collateral installment notes which were both executed by the defendant on November 1, 1973. The terms of the note provided that installment payments would be made on March 31 of each year with the first payment on each to be made on March 31, 1975. On March 31, 1975, the defendant failed to make the payments which were then due under the terms of the note. The plaintiff gave written notice to the defendant that the entire amounts of the principal and interest on the notes were then due. Upon the defendant's refusal to pay these amounts, on February 16, 1978, the plaintiff filed suit seeking to recover the amount of the unpaid principal balances on the two notes plus interest.

The defendant filed an answer and a counterclaim and included in his answer several specific affirmative defenses. After pretrial conferences, the issues in the case were narrowed to the single defense raised by the defendant to the effect that because of alleged violations of the Georgia Securities Act of 1957 as amended the sale of stock was voidable by the defendant. It should be noted that our present "Georgia Securities Act of 1973," although passed in 1973, was not effective until April 1, 1974, and has no application to this case.

Both parties moved for summary judgment. The plaintiff by affidavit set forth that he was not an issuer or dealer in securities nor salesman but was a mere owner; that the only sale of Jorges stock he

made in 1973 was the sale of the 2,000 shares in question; that he had made nine other sales of Apex stock to various individuals because they were new employees at Jorges and Apex. The affidavit also contained the statement by the plaintiff that "At no time have I ever registered my stock in Jorges or Apex with the State of Georgia, nor have I registered myself as an issuer, dealer, limited dealer, salesman or limited salesman of securities in the State of Georgia." The defendant, by affidavit, set forth that within approximately one year of November 1, 1973, that the plaintiff had sold shares of Apex to sixteen named individuals and shares of Jorges to five named individuals. After a hearing on the motions, the trial judge granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment.

In the order, the trial judge made the following findings of fact: "In 1973 Edward W. Jorges sold stock to the defendant. During that year he also sold Apex stock to nine other individuals besides the defendant, each of these individuals being employees at Jorges or Apex. Mr. Jorges has never held himself out as being engaged as an agent, broker or principal in the business of offering, buying, selling, or other dealing or trading in securities issued by another person so as to exactly fall in any of the definitions under Ga. Code Ann. § 97-107 of 'Dealer', 'Limited Dealer', 'Salesman', or 'Limited Salesman'.

"Further, the Court finds that the sale by the Plaintiff to the Defendant was not an isolated transaction as defined by then Ga. Code Ann. § 97-107 since the transaction was one of repeated and successive transactions of like character. Further, the Court finds specifically that the Plaintiff did sell, and offer to sell, securities as defined by said Act." Based on these findings the trial judge determined that the Georgia Securities Act was in effect; that the transaction fell within no exceptions contained therein and that the plaintiff violated the Securities Act by the sale of the stock. Appeal was taken from that judgment. *Held:*

The plaintiff contends since he was owner of the stock but not an issuer, dealer, limited dealer, salesman, or limited salesman, that the transactions in question did not come within the purview of the Georgia Securities Act of 1957, as amended. We can not agree with this contention.

In *Arnold v. Mixon,* 127 Ga. App. 549 (1) (194 SE2d 307) this court held: "The Georgia Securities Act, as amended (Ga. L. 1957, p. 134; 1959, p. 89; 1960, p. 957; 1963, p. 557; 1969, p. 235 (without consideration of the amendment by Ga. L. 1970, p. 488; 1970, p. 718); Code Ann. Title 97) regulates the issuance and sale of securities, and the capital stock of a corporation is a security under the terms of the Act. Section 1 (i) (Code Ann. § 97-102 (i)). Section 3 of the Act (Code

Ann. § 97-104) provides that 'It shall be unlawful to sell or offer to sell any securities within this State, except those exempt under Section 5 (Code Ann. § 97-106) or those sold in transactions exempt under Section 6 (Code Ann. § 97-107), until registration of such securities . . .'It appears that only 'a dealer, or the issuer' may file for registration of securities under the Act (Section 3 (a) and (b); Code Ann. § 97-104 (a), (b)); and that an individual desiring to sell stock owned by him, not otherwise registered, would have to register as a limited dealer under Section 4 of the Act (Code Ann. § 97-105)." This is a clear indication that an owner of securities came within the meaning of the Act.

Moreover, former Code Ann. § 97-107(c) (Ga. L. 1957, pp. 134, 150 as amended through Ga. L. 1963, pp. 557, 560) exempted certain transactions from the registration provisions of the Georgia Securities Act among those being: "(c) An isolated transaction in which any securities are sold by or for the account of the owner of such securities, whether through a dealer, a limited dealer or otherwise, if such transaction is not one of repeated and successive transactions of a like character, and if such owner or his representative is not the issuer or underwriter of such securities." Clearly, if an owner was not included in the Act, then this exemption with regard to isolated transactions by an owner would not be necessary. It should be noted that our present Georgia Securities Act of 1973, Code Ann. § 97-109 (c) (Ga. L. 1973, pp. 1202, 1241; as amended through 1979, pp. 1296, 1300, 1301, eff. April 17, 1979) provides for the inapplicability of the registration provisions to "any transaction in securities not involving the issuer of the securities, an underwriter of the securities, or an affiliate of the issuer of the securities." This indicates a very positive way that an owner of securities could have been excluded from the provisions of the Act in 1957 but this was not done. We, therefore, consider whether the facts of this case are such so that the transaction in question would come within the exemption of an isolated transaction as defined by former Code Ann. § 97-107 (c).

It should be observed that former Code Ann. § 97-114 (Ga. L. 1957, pp. 134, 159) set forth: "Every sale or contract for sale in violation of any of the provisions of this Chapter, or of any order issued by the commissioner under any provisions of this Chapter, shall be voidable at the election of the purchaser." This section also provided that "no action shall be brought . . . for the recovery of the purchase price after two years from the date of such sale or contract for sale . . ." However, in *Mechanics Loan v. Mathers,* 185 Ga. 501 (195 SE 429), which was decided at a time when there was a limitation period of twelve months, the Supreme Court held: "such period of limitation upon the right to rescind does not prevent the purchaser

from subsequently asserting a want of compliance with the statute, where it is done merely to defeat the plaintiff's alleged right of recovery and thus by way of defense only, and not for the purpose of canceling or rescinding the prohibited contract or to recover money or other thing of value paid or parted with by the purchaser in consideration thereof."

Were the transactions here "one of repeated and successive transactions of like character"? Since, as to the Apex stock, there were admittedly nine other sales of a like character to employees, we find that the trial judge did not err in granting summary judgment on this issue. However, as to the Jorges stock there was dispute in the proof offered as to whether there was more than one transaction of a like character. Under such circumstances, a jury question as to that issue was presented and it was error to grant summary judgment on the suit insofar as it sought recovery on the note for the sale of the Jorges stock.

The trial judge correctly denied the plaintiff's motion for summary judgment based on the record before us.

*Judgment affirmed in part and reversed in part as to the grant of defendant's motion for summary judgment; judgment affirmed as to denial of plaintiff's motion for summary judgment. Shulman, P. J., and Carley, J., concur.*

DECIDED MARCH 1, 1982.

*Richard W. Bethea, Jr.,* for appellant.
*J. Mike Brown,* for appellee.